PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUST FUNKY, LLC, | ) | |
| | ) | CASE NO.  5:20-CV-2699 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNIQUE LOGISTICS INTERNATIONAL | ) | |
| NYC, LLC, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF No. 23] |

Pending is Plaintiff's Motion for a Temporary Restraining Order (TRO).  ECF No. 23.

Plaintiff seeks the release of certain inventory from the possession of the Defendants.

Defendants[1] have filed a memorandum in opposition to Plaintiff's Motion, ECF No. 28, and

Plaintiff has filed a memorandum of reply, ECF No. 30.  Both sides have attached evidence to

their filings.  The Court has been advised, having reviewed the parties' papers and evidence and

having heard argument from the parties.  For the reasons that follow, the Motion is granted.

## I.  Background

Plaintiff filed this case, and the instant Motion for TRO, because it has reached an

apparently intractable impasse with Defendants.  Plaintiff is a seller of specialty retail items.

Starting in 2016, Plaintiff hired Defendants to warehouse and distribute its inventory.  The

---

[1]  The Opposition to Plaintiff's Motion was filed only by Defendant Unique
Logistics International (NY), LLC.  The remaining Defendants have been joined in this
case, ECF No. 17, but have not yet appeared.  *See infra*, Section III.

(5:20-CV-2699)

parties' relationship was governed by oral contract for the first few years, until Plaintiff requested a written contract in 2019.  *See* ECF No. 17-1.  The trouble started in 2020.  The precise cause of the breakdown in the parties' relationship is, at this stage in the litigation, not entirely clear, but it appears to have started with a former employee of Plaintiff's named Manish Jain, who is not a party to this case.  Plaintiff alleges that during the parties' relationship, Mr. Jain and Defendants independently contracted—without Plaintiff's knowledge—for Mr. Jain, rather than Defendants, to maintain Plaintiff's inventory.  When Mr. Jain's employment was terminated in August 2020 (it is unclear whether the termination was initiated by Mr. Jain or by Plaintiff), Defendants demanded his reinstatement.  ECF No. 17 at PageID #: 119.

Late autumn is an important time of year in the retail market because of certain events such as "Black Friday" and "Cyber Monday;" both are traditionally big shopping days.  Plaintiff alleges that, in an effort to ensure that it would be able to take advantage of the 2020 season, it issued a large number of shipping orders to Defendants in October and November.  *Id.* Defendants, according to Plaintiff, refused to ship without being paid $80,000 they claimed was overdue.  Plaintiffs immediately paid, but Defendants still refused, and currently refuse, to ship or release the inventory without being paid additional sums, specifically sums owed for storage of the inventory.  *Id.* at PageID #: 120-21.  Plaintiff values the inventory in Defendants possession at over $1,000,000, ECF No. 30-5, while Defendants value it at $465,000, ECF No. 28 at PageID #: 566.

Defendants' position is that Plaintiff owes $48,359 in storage fees, and that Defendants are entitled to a lien on the inventory in their possession until this is paid.  *Id.* at PageID #: 564-

2

(5:20-CV-2699)

65.  This is the basis of the current impasse: Plaintiff disputes the storage charges and will not

pay them to Defendants' satisfaction, and Defendants refuse to release the inventory until

Plaintiff pays.  In the meantime, the storage charges continue to increase each day.  ECF No. 23-

4 at PageID #: 413.  Plaintiff disputes that any of the storage charges are due because it alleges

that Defendants unjustifiably refused to deliver the inventory and thus should not be in

possession of it in the first place.  ECF No. 23 at PageID #: 387.  Plaintiff also, however has

specific objections to $31,518 of the storage charges.  Id. at PageID #: 379-86.

The parties attempted to resolve their dispute in non-binding arbitration, and the arbitral

panel issued a preliminary order for interim relief, ordering Plaintiff "(i) to pay [Defendants]

$16,841, reserving all rights to protest; and (ii) to escrow $31,518 by no later than April 7, 2021.

Upon the completion of both conditions by [Plaintiff, Defendants are] directed to release the

goods in question within 48 hours."  ECF No. 23-9 at PageID #: 425.  Plaintiff immediately

complied, using Plaintiff's counsel's trust account for the escrow portion.  ECF No. 23-10.

Defendants, to date, have not been satisfied with the arrangement proposed by the arbitral panel;

hence the current impasse.[2]

## II.  Standard of Review

As recently stated by the United States Court of Appeals for the Sixth Circuit:

---

[2]  At the Hearing, Defendants objected under Fed. R. Ev. 408 to Plaintiff's
introduction of facts related to the parties' settlement discussions.  The Court overruled
that objection under Fed. R. Ev. 104(a), as the question of whether to issue a TRO is a
preliminary one, and the Court is typically not bound by the rules of evidence in
addressing preliminary questions.  At any rate, the objection is irrelevant because the
Court does not rely on any evidence that would by inadmissable under Fed. R. Ev. 408 in
deciding the instant Motion.

(5:20-CV-2699)

> "A district court must balance four factors in determining whether to grant a [temporary restraining order[3]]: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.'" *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)).  "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  However, "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 326-27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).  "[T]he party seeking a [temporary restraining order] bears the burden of justifying such relief." *Livingston County*, 796 F.3d at 642 (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)).

*Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020).  No single factor is determinative except that "a finding that there is simply no likelihood of success on the merits is usually fatal." *Miles v. Mich. Dept. of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Gonzales v. Nat'l Bd. Of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000)).

### III.  Notice

As an initial matter, Defendants argue that Plaintiff has failed to serve process on an indispensable party, namely, Unique Logistics International (LAX), LLC (ULI LAX).  ECF No. 28 at PageID #: 561.  Plaintiff's original Complaint only named Unique Logistics International

---

[3]  This quotation addresses the standard for granting a preliminary injunction. But, "[a]s long as there is notice to the other side and an opportunity to be heard, the standard for a preliminary injunction is the same as that for a temporary restraining order." *Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004).  Here, Defendants received sufficient notice and opportunity to be heard. *See infra*, Section III.

4

(5:20-CV-2699)

(NY), LLC.  ECF No. 1.  Three additional parties, including ULI LAX, were named in the

Amended Complaint.  ECF No. 17.  Defendants submit that, "[a]lthough Plaintiff purports to add

ULI LAX as a party to this action in the Amended Complaint, ULI LAX has not been served with

a summons and amended complaint in this action."  ECF No. 28 at PageID #: 561.  This is a

problem for the TRO, according to Defendants, because the dispute is between Plaintiff and ULI

LAX—the written contract is allegedly between Plaintiff and ULI LAX, "Plaintiff is storing

goods at the ULI LAX warehouse in Los Angeles," *id.* at PageID #: 566, and "Plaintiff's motion

for a TRO and release of goods must be brought against the party with whom it contracted to

warehouse the goods," *id.* at PageID #: 561.

Defendants' argument lacks merit because formal service of process is not a prerequisite

for the issuance of a TRO.  "The notice required by Rule 65 is not equivalent to formal service of

process.  But '[t]he notice required by Rule 65(a) . . . implies a hearing in which the defendant is

given a fair opportunity to oppose the application and to prepare for such opposition." *Salita*

*Promotions Corp. v. Ergashev*, No. 20-12547, 2020 WL 6707619, at *3 (E.D. Mich. Nov. 15,

2020) (quoting *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 246 (6th Cir. 2011)).

Here, all of the Defendants—including ULI LAX—were given sufficient notice to prepare for

and oppose Plaintiff's Motion.  First, Plaintiff alleges in the Amended Complaint, and

Defendants do not dispute, that Sunandan Ray is the CEO of both the NY and LAX entities, and

the majority owner and director of Unique Logistics International, Inc.  ECF No. 17 at PageID #:

113.  Mr. Ray is also himself a named Defendant.  *Id.* at PageID #: 110.  Mr. Ray and, therefore,

the entities for which he serves as an officer, *see* Fed. R. Civ. P. 4(h)(1)(B), clearly had sufficient

5

(5:20-CV-2699)

notice of the TRO and hearing because he was present and, through counsel, vigorously opposed

the Motion.  *See* Minutes of Proceedings [non-document], April 8, 2020.

## IV.  Analysis

Balancing the four factors that govern the adjudication of a motion for TRO, the Court

finds that Plaintiff's Motion should be granted.  The Court examines each of the factors in turn

below.

### 1.  Plaintiff's Likelihood of Success on the Merits

Plaintiff presents three general categories of argument as to why it is likely to succeed on

the merits in this litigation.  First, Plaintiff itemizes various reasons why the invoices for the

storage charges are incorrect.  ECF No. 23 at PageID #: 379-86.  These arguments cover $31,518

of the charges.  *Id.* at PageID #: 379.  Second, Plaintiff argues that none of the storage charges

are proper because Defendants, having unjustifiably refused to perform deliveries or release the

inventory, should not be in possession of any of the inventory in the first place.  *Id.*  Finally,

Plaintiff argues that even if Defendants have a valid lien on some of the inventory (either under

the written contract or California law), Defendants should be ordered to release the vast majority

of the inventory because its value so greatly exceeds the claimed storage charges.  *Id.* at PageID

#: 387.

Defendants generally argue that they are "willing to transfer the goods to Plaintiff once

appropriate provisions are made to protect their rights.  Plaintiff's objections to the invoices as

outlined in counsel's memorandum are not legitimate and are not supported."  ECF No. 28 at

PageID #: 564.  More specifically, to Plaintiff's first argument, Defendants respond that their

6

(5:20-CV-2699)

storage fees are reasonable and consistent with industry standards and the parties' practices.  *Id.* at PageID #: 563-64.  Defendants also submit two Declarations on this point.  ECF Nos. 28-1, 28-3.  To Plaintiff's second argument, Defendants respond that Plaintiff has not substantiated its claim that Defendants refused to ship any product for Plaintiff, and they argue that they do have a valid warehouseman's lien under either the written contract or California law.  ECF No. 28 at PageID #: 562, 565.  To Plaintiff's last argument, Defendants assert that the value of the inventory is reasonable security for the storage charges, especially because the longer they hold the inventory, the higher the charges will become.  *Id.* at PageID #: 566-67.

The Court finds that Plaintiff is likely to succeed on the merits.  This dispute is not only about whether the storage fees are correct, but also—at this point, mostly—about the disposition of the inventory.  *See* ECF No. 17 at PageID #: 131 (alleging a cause of action for conversion). At this early stage of the litigation, on the limited record before the Court, it is admittedly difficult to determine which contract governs the parties' current impasse, be it the written agreement or an oral bailment for fee arrangement, as proposed by Plaintiff in its Motion.  *See* ECF No. 23 at PageID #: 377-78.  Either way, however, Plaintiff has a right to possess and control its property.

Under the written contract, Plaintiff is supposed to deliver goods to Defendants and then control what Defendants do with them.  ECF No. 17-1 at PageID #: 149 ("[Plaintiff] shall provide [Defendants] with written instructions concerning the release or other disposition of

7

(5:20-CV-2699)

Goods.").  Under a bailment theory, in either Ohio or California,[4] the bailor transfers only a temporary, possessory interest in the subject of the bailment, and retains the right to reclaim the property.  *See* 8 ROBIN C. LARNER, OHIO JURISPRUDENCE, BAILMENTS § 1 (3d ed. 2021) ("[A] bailment exists where one person delivers personal property to another to be held for a specific purpose with a contract, express or implied, that the property will be returned or accounted for when this special purpose is accomplished or retained until the bailor reclaims the property.); 9 ROMUALDO P. ECLAVEA, CALIFORNIA JURISPRUDENCE, BAILMENTS § 5 (3d ed. 2021) ("Inherent in the bailment relationship is the requirement that the property be returned to the bailor, or duly accounted for by the bailee, when the purpose of the bailment is accomplished or that it be kept until it is reclaimed by the bailor.").

Defendants argue that their right to a warehouseman's lien supersedes Plaintiff's right to possession of its property.  Defendants ground their right to a lien in both the written contract and California law.  ECF No. 28 at PageID #: 565 (citing ECF No. 17-1 at PageID #: 150; CAL. COM. CODE § 7209 (West 2007)).  Under the contract, however, any "lien is released by delivering the Goods and/or payment of the charges."  ECF No. 17-1 at PageID #: 150.  The contract does not specify that the payment must be made directly to Defendants, without reservation of rights by Plaintiff.  Plaintiff has satisfied this condition by paying the entire amount claimed either directly

---

[4]  As the Court has subject matter jurisdiction over this case based on 28 U.S.C. § 1332(a), it applies the law of Ohio, the state in which it sits.  *See City of Wyandotte v. Consolidated Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001).  The parties dispute whether Ohio courts would apply Ohio or California law to this dispute.  Because the outcome would be the same under either state's law, the Court need not undergo a choice of law analysis at this time.  *See Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 115 (Ohio 2006).

(5:20-CV-2699)

to Defendants or into escrow.  ECF No. 23-10.  As for a warehouseman's lien under California law, Plaintiff is correct that Defendants are only entitled to a lien up to the amount of the storage fees. *Fabrique Innovations, Inc. v. Etiwanda Logistics, Inc.*, No. 5:20-CV-861-VAP-SHKx, 2020 WL 5441576, at *3 (E.D. Cal. July 30, 2020) ("[T]he lien is a security against only what the bailor owes or may owe for storage and transportation.").  Additionally, Plaintiff has already offered Defendants additional security for the claimed storage fees by placing the remaining disputed funds into escrow.  ECF No. 23-10.

The Court finds, therefore, that Plaintiff likely has the greater right to possession of the inventory, and is therefore likely to prevail on the merits in this case.

### 2.  Irreparable Harm

Plaintiff argues that it will suffer irreparable harm because it is losing considerable business, and potentially customers, due to its inability to deliver inventory to its customers. ECF No. 23 at PageID #: 390; *see also* ECF No. 30-5.  Plaintiff submits that not only are these consequences of Defendants' possession of the inventory potentially irreversible—for example, if Plaintiff were to lose a customer—they are also contractually unrecoverable per the written contract between the parties.  ECF No. 17-1 at PageID #: 150 ("[Defendants] shall not be liable for loss of profit or special, indirect or consequential damages of any kind.").  Defendants counter that "Plaintiff's claims are run-of-the-mill breach of contract damages," which do not constitute irreparable harm.  ECF No. 28 at PageID #: 569.

The Court finds that Plaintiff has established that it will suffer irreparable harm in the absence of an injunction.  "[T]he purpose of a TRO under Rule 65 is to preserve the status quo so

9

(5:20-CV-2699)

that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Banker's Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996).  It is true that in one sense a TRO in this case would require the status quo to change, by forcing Defendants to release the inventory.  In a more important sense, however, a TRO will stop the ongoing damage to Plaintiff, thus allowing for a reasoned resolution of the parties' dispute.  Plaintiff is incurring more and more damage every day it lacks access to its inventory, ECF No. 30-5, and this damage to its ongoing enterprise likely cannot be repaired after the fact with money damages.  Plaintiff is correct that the contract provision it alludes to, if operative and enforceable, would prevent it from collecting any consequential damages to compensate it for the profit it is losing each day—the primary source of harm it faces in this situation.  Additionally, as Defendants themselves noted, the longer they hold the inventory, the higher the storage charges will become.  ECF No. 28 at PageID #: 567. Eventually, absent some intervention, the charges would eclipse the value of the inventory and put Plaintiff out of business.  Even if this is not an imminent threat, it would be severe irreparable harm, which, given the parties' current impasse, appears to be avoidable only by judicial intervention.

The Court finds, therefore, that a TRO is necessary to prevent irreparable harm to Plaintiff and to allow the parties to litigate stable claims on ascertainable facts, rather than the current moving target.

### 3. Harm to Others

Plaintiff did not discuss this factor in its brief, but Defendants submit that the issuance of a TRO would cause harm to others; specifically, to Defendants.  They argue that a TRO would

10

(5:20-CV-2699)

harm them by depriving them of their duly earned storage fees and warehouseman's lien. ECF No. 28 at PageID #: 569-70.  The Court disagrees.  Not only has Plaintiff already paid Defendants $16,841 of the claimed amount, Plaintiff has also placed the remainder of the claimed amount in escrow.  ECF No. 23-10.  Defendants argue that these funds are submitted under protest, and subject to judicial (or arbitral) determination of the validity of the storage fees. But Defendants cannot be harmed by not receiving money they are not entitled to.  Defendants' entire exposure in this situation is covered.  The Court finds, therefore, that no others would be harmed by the issuance of a TRO.

### 4. Public Interest

Because this is a private, commercial dispute between two companies, the public interest is hardly implicated.  Defendants argue that the public interest would be harmed by the issuance of a TRO because this would undermine California's warehouseman's lien system.  ECF No. 28 at PageID #: 570.  The Court disagrees.  Defendants seek to abuse the warehouseman's lien system by holding as collateral property worth far more than the amount they claim they are due. See *Fabrique Innovations, Inc.*, 2020 WL 5441576, at *3.  Furthermore, Defendants do not need the protection of a warehouseman's lien because their exposure is entirely covered by the funds in escrow.  Finally, the Court finds that, if anything, the public interest is best served by the free flow of the inventory in commerce and Plaintiff's customers' receipt of the goods they have ordered.  ECF No. 30-5.  This factor, too, supports the issuance of a TRO.

11

(5:20-CV-2699)

### 5.  Balancing

The factors listed above "are not prerequisites, but are factors that are to be balanced against each other."  *Hargett*, 978 F.3d at 385 (quoting *Overstreet*, 305 F.3d at 573).  On balance, the Court finds that Plaintiff's Motion must be granted.  Plaintiff has established a reasonable likelihood of success on the merits, and the ongoing harm faced by Plaintiff simply outweighs Defendants' concern over not being paid the claimed storage fees.  A TRO is necessary in this case to stabilize the situation and allow the parties to reach a reasoned resolution of their dispute.

### V.  Attorneys' Fees

Plaintiff also moves for attorneys' fees in connection with the litigation before the arbitration panel and the instant Motion.  ECF No. 23 at PageID #: 391.  The Court holds this Motion in abeyance pending the conclusion of this case.

### VI.  Defendants' Pending Motions

Pending are Defendants' Motions to Stay this case pending the outcome of the parties' litigation before the arbitration panel, and to correspondingly extend the time to respond to Plaintiff's Amended Complaint.  ECF Nos. 21 and 22.  The parties agreed at the hearing that these Motions should be granted unless a hearing before the Court is necessary to determine if the TRO should become a preliminary injunction.  Per Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen days after entry, *i.e.*, on April 23, 2021, unless the Court, for good cause, extends it for another fourteen days.  The only way the Order can survive beyond that time is with Defendants' consent.

(5:20-CV-2699)

The Court, therefore, will grant Defendants' Motions on the condition that Defendants consent to the TRO lasting until fourteen days after this case is reopened.  Without Defendants' consent, there is no point to staying the case because a preliminary injunction hearing would need to be held.  Defendants shall notify the Court of their consent, or lack thereof, on or before April 14, 2021.

### VII.  Conclusion

Plaintiff's Motion for TRO, ECF No. 23, is granted.  Defendants are ordered to immediately make Plaintiff's inventory available for pickup and transfer from the facility where it is currently housed.  This transfer must be accomplished by one week from the date of this Order.  Pursuant to Fed. R. Civ. P. 65(c)'s requirements, Plaintiff's counsel will transfer the amount currently held in trust to the Clerk of Court by 12:00 p.m. on Monday, April 12, 2021. The TRO will take effect upon the posting of this bond.  The Court will hold these funds pending resolution of the parties' dispute, which will provide Defendants continued security for the storage fees claimed.  A preliminary injunction hearing will be held on April 23, 2021, unless Defendants notify the Court by Wednesday, April 14, 2021, that they consent to an extension of this Order, in which case the Court will stay the case pending the parties' arbitration, and this Order will expire fourteen days after the case is reopened.


IT IS SO ORDERED.


    April 9, 2021                        */s/ Benita Y. Pearson*
Date                                  Benita Y. Pearson
                                   United States District Judge

13